IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TERRESKI MULLINS, et al.,

        Plaintiffs,

v.                                      CIVIL ACTION NO.   2:12-cv-02952

ETHICON, INC., et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER
(Defendants' Motion for Partial Summary Judgment
re: Cora Tomblin, No. 2:14-cv-14664)

Pending before the court is the defendants' Motion for Partial Summary Judgment [ECF No. 1183]. As set forth below, the defendants' Motion is **GRANTED**.

I.    Background

This case represents the consolidation of twenty-six out of nearly 28,000 cases filed against Ethicon, Inc. and Johnson & Johnson, Inc. (collectively "Ethicon"). The Ethicon MDL is one of seven MDLs assigned to me related to pelvic mesh, collectively encompassing over 60,000 cases. This action involves twenty-six West Virginia plaintiffs who were implanted with Tension-free Vaginal Tape ("TVT"), a mesh product manufactured by Ethicon to treat stress urinary incontinence ("SUI"). These cases have been consolidated on all claims. *See* Pretrial Order No. 184 [ECF No. 25] ("PTO"); Fourth Am. Docket Control Order [ECF No. 258]; Order, Dec. 27, 2016, at 2

[ECF No. 1527] ("The trial will address *all triable issues in each case*.").

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to

2

preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

"[B]ecause the plaintiffs are West Virginia residents and had their surgeries at hospitals in West Virginia, the cases solely implicate West Virginia law." Pretrial Order No. 184 at 4 (citing *McKinney v. Fairchild Intern., Inc.*, 487 S.E.2d 913, 922 (W. Va. 1997) ("Traditionally, West Virginia courts apply the *lex loci delicti* choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury.")). Accordingly, West Virginia law governs the plaintiff's case.

### III. Analysis

Ethicon argues it is entitled to summary judgment because the plaintiff's claims are barred by the statute of limitations.

### A. Statue of Limitations

The plaintiff's claims are governed by a two-year statute of limitations. *See* W. Va. Code § 55-2-12. West Virginia applies the discovery rule to the statute of limitations:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the

3

conduct of that entity has a causal relation to the injury.

Syl. pt. 4, *Gaither v. City Hosp., Inc.*, 487 S.E.2d 901, 903 (W. Va. 1997). The Supreme Court of Appeals of West Virginia has elaborated, "Where a plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding that potential breach." *McCoy v. Miller*, 578 S.E.2d 355, 359 (W. Va. 2003).

The plaintiff's claims are barred by the statute of limitations because, at the very latest, her claims accrued in 2007; thus, her claims expired in 2009. Throughout her deposition, the plaintiff stated that by 2007 she was aware the TVT was the likely cause of her injuries:

> Q. What did Dr. Edwards say about the mesh that you believe he was implying something was wrong with it?
>
> A. [H]e made an appointment with me because I was having problems peeing, and he tried to adjust it in the office. It was in '07 and . . . he said there was a kink in it.
>
> Q. He told you in 2007 there was a kink in your mesh?
>
> A. Yes.
>
> . . .
>
> Q. And he told you that he believed there was a kink in your mesh?
>
> A. Well, like, where you pee, like, the hose you pee out of?
>
> Q. Yes.
>
> A. There's, like, there was a kink in it that kept me from peeing.

Q. And did Dr. Edwards tell you then in 2007 that he thought that that was caused by your mesh?

A. Yes.

. . .

Q. And what kind of complaints were you having in 2007 that caused you to go see Dr. Edwards?

A. I couldn't pee. I, I felt the urge to pee; but when I'd sit down, it wouldn't come out.

Q. And did that cause you pain like you described to me earlier?

A. Yes, ma'am. It's very painful . . . .

. . .

Q. How long was it between this revision or adjustment that Dr. Edwards did in 2007 before you started seeing Dr. Wyner?

A. I don't know, maybe two or there years. I just dealt with it the best way I could . . . .

. . .

Q. [D]id anyone, a doctor or one of your partners, tell you that the rubbing feeling you had during sexual intercourse within six months of your surgery, did they ever tell you that that was the mesh?

A. Later on in life they told me, thought it was the mesh—

Q. How much later?

A. —because they told me there was a kink. Oh, this is about '07, I think; because they did a readjustment.

. . .

Q. And you complained to Dr. Edwards, you believe, before he did

5

the procedure in 2007?

    A.      Yeah.

    Q.      And at that time he advised you he thought it was related to your mesh.

    A.      I think so, yeah.

Cora Tomblin Dep. 48:13–23, 49:10–19, 50: 5–11, 50:18-22, 141:14–24, 153:24–154:5, April 25, 2016 [ECF No. 1183-2].

Despite the plaintiff's own deposition testimony, the plaintiff argues that genuine disputes of material fact exist because, for example, Dr. Edwards "does not have any records reflecting an appointment in 2007." Resp. 3 [ECF No. 1278]. The plaintiff futher sates that "according to [Dr. Edwards's] records that do exist[,] the first time he saw Ms. Tomblin after her 2005 surgery was in January 2013." *Id.* at 3–4. Moreover, the plaintiff states that "Dr. Edwards does not have any recollection (or any corresponding records) of ever diagnosing Ms. Tomblin as having a 'kink' in the mesh." *Id.* at 4. The plaintiff's arguments, however, are inconsequential.

Dr. Edwards testified that he was unable to locate *any* clinical records from 2007—not just records specific to the plaintiff. *See* Dr. Edwards Dep., 37:13–17, May 18, 2016 [ECF No. 1183-19]. Further, Dr. Edwards acknowledged that there was a "chronological gap" in his records for the plaintiff between 2005 and 2012. *Id.* at 38:11–13. Importantly, when questioned about the plaintiff's testimony regarding a 2007 appointment with him concerning the plaintiff's TVT mesh complications, Dr. Edwards stated that it is possible that the appointment did, in fact, occur:

> Q. In her deposition, Ms. Tomblin recounted that you told her in 2007 she had a kink in the mesh. Do you remember that conversation?
>
> A. I don't. I don't recall.
>
> Q. Is it possible that conversation occurred?
>
> A. It's possible.

*Id.* at 39:24–40:5. Thus, there are no *genuine* disputes of material fact on this point. The plaintiff repeatedly acknowledged in her deposition that by 2007 she believed that her TVT device was the source of several complications. The fact that Dr. Edwards is unable to locate clinical records from the applicable period or is unable to remember a specific conversation with a specific patient many years later does not create a genuine dispute of material fact; instead, Dr. Edwards's testimony simply shows that he is unable to refute the plaintiff's testimony.

Accordingly, the court **FINDS** that the plaintiff's claims regarding the TVT device accrued in 2007 and expired in 2009. Thus, the plaintiff's present claims are barred by the applicable statute of limitations.

## IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Ethicon's Motion for Partial Summary Judgment [ECF No. 1183] is **GRANTED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 20, 2017

7

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE